Opinion issued November 2, 2006
 
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01091-CV
____________

GEORGE C. BROWN, Appellant

V.

LUCY TRAYLOR, DARRYL KEITH WALKER, PAUL WAYNE
WALKER, ANTHONY C. WALKER, TERRY L. WALKER, and JAMES E.
WALKER, Appellees




On Appeal from Probate Court No. 4
Harris County, Texas
Trial Court Cause No. 323,033-401




OPINION DISSENTING FROM DENIAL OF EN BANC
RECONSIDERATION

          This is a classic example of the adage that bad cases make bad law. Appellant,
George C. Brown (“George”) appeals from a judgment, rendered upon a jury verdict,
admitting to probate what the jury concluded was a true and correct copy of a valid
will executed by his father, Henry Brown (“Henry”) on March 13, 1999 (the 1999
Will Copy). Because I believe the case was tried under an incorrect charge and the
result is an appellate opinion that misconstrues and gravely weakens the statutory
protections against the probate of fraudulent wills, I respectfully dissent from denial
of en banc review.


 
          The panel holds that the law as stated in the charge was correct and that
appellant waived his right to legal review of the evidence in support of the judgment.
Thus, finding that the evidence presented to the jury was factually sufficient to
support the jury’s findings, it affirms the judgment holding the 1999 Will valid and
ordering it probated. I would hold that (1) the trial court erred in rejecting a jury
question and instruction that correctly stated the law regarding attestation of a will
and in submitting a legally improper instruction to the jury and (2) that the improper
jury question and instructions resulted in an erroneous judgment holding that the
1999 Will was executed with all the formalities and solemnities and under the
circumstances to make it a valid will. I would reverse and remand the case for further
proceedings in accordance with this opinion.
THE FACTS
          Henry Brown was an elderly and ill man in 1999 and had not signed his own
documents for years when the jury found he had the 1999 Will drafted and executed
in accordance with the law.
          The undisputed evidence establishes that Pamela Yancy—a notary public and
not a lawyer—drafted all pages of the 1999 Will, notarized all the signatures, and
made the 1999 Will Copy offered for probate. Yancy also signed the 1999 Will she
had drafted as a subscribing witness, signing on a separate page on which two
signatures by Henry appear, and was the only subscribing witness who also signed
the testamentary pages, which Henry did not sign. Yancy is the daughter of appellee
Lucy Traylor, a non-relative of Henry and a substantial legatee under the 1999 Will,
who offered the 1999 Will Copy for probate. 
          The other subscribing witnesses—Melva Collins, Wanda Walker, and Darryl
Walker—signed another separate page styled an “attestation clause” at Yancy’s
request. That page was unattached to the other pages of the 1999 Will Copy offered
for probate, was in a different font from the testamentary pages, and contained
interlineations and strike-outs regarding which no one but Yancy testified. The
“attestation clause” stated:
On the date above written, Henry J. [stricken] Brown, well known to us
declared to us, and in our presence, that this instrument,
 
consisting of [interlineated ‘5pg’] pages, is his last will and testament,
and Henry [‘J.’ stricken] Brown, then signed this instrument in our
presence, and at Henry [‘J.’ stricken] Brown’s request we now sign this
will as witnesses in each other’s presence. Further that Henry [‘J.’
stricken] Brown, appeared to us to be of sound mind and lawful age, and
under no undue influence.



 
The “attestation clause” was not a self-proving affidavit, as the evidence established
and the panel found; and thus the validity of the 1999 Will had to be proved by
testimony at trial. See Tex. Prob. Code Ann. § 59(a) (Vernon 2003).
          Yancy, the drafter of the 1999 Will, was the only witness who testified to
having any knowledge of the contents of the 1999 Will. She was also the only
witness who testified to the circumstances under which the 1999 Will was prepared,
and she alone explained the different fonts, unattached and unnumbered pages, strike-outs, and interlineations in the 1999 Will Copy submitted for probate. She was also
the only witness who testified to seeing Henry Brown execute the 1999 Will and the
only subscribing witness who testified that he knew its contents. Other than Yancy’s
testimony, there is no evidence that the unnumbered testamentary pages, the separate
page with Henry’s two signatures and Yancy’s signature, and the separate “attestation
clause” with the signatures of Melva Collins and Wanda and Darryl Walker—were
ever attached to each other or formed part of the same instrument. There is no
evidence from anyone but Yancy that the original of the 1999 Will Copy offered for
probate was in the room or even in existence when Collins and Wanda and Darryl
Walker signed the separate attestation clause. 
          On direct examination, Yancy testified that Henry signed the 1999 Will; that
Darryl and Wanda Walker and Melva Collins were all present when he signed; and
that all witnesses signed their names in his presence and in her notary log. She also
testified that Henry did not discuss anything about the 1999 Will with her on March
13, 1999, the date the other subscribing witnesses signed the attestation clause,
“because again the document was done.” The only conversation was “[j]ust some
basic small talk. . . . But nothing specifically directed towards the will; just small
talk.” Her only conversation with Darryl was to ask him for his I.D. Yancy testified
that Darryl and his mother were at the house for 20 minutes, which “was an
estimation based on how much time it takes to write things down.” She testified that
Melva Collins “might” not have read what she was signing, stating, “You’d have to
ask her.” On cross-examination, when counsel for appellant attempted to ask Yancy
whether she recalled Darryl or Wanda Walker reading the 1999 Will, appellees’
attorney objected on the ground—reiterated several times during the trial—that
“[w]itnesses do not have to read a will.” The court sustained the objection. 
          Two other subscribing witnesses, Melva Collins and Darryl Walker, also
testified at trial. Wanda Walker, Henry’s sister and the other subscribing witness, had
passed away before Henry. 
          Collins testified by deposition read in open court that she knew she was signing
a will only because Yancy picked her up, told her they were going to lunch and a
movie, and asked her “would I go with her and to get something notarized—to get a
will notarized or something. I can’t remember the wording. You know, I just don’t
remember.” She signed something “at Mr. Brown’s house.” There was a lot of
paperwork on the table, but “I don’t know. I don’t know the full details of
what—what was here.” She was “just like sitting on the sideline. I don’t know what
was really going on.” She did not remember who was there except Yancy and “the
guy,” and she did not remember “what words were said about nothing.” 
          Collins testified that the “guy” sitting at the table “was an older man, I think.” 
Something was wrong with him, and “[h]e just looked sickly to me.” This was the
first time she had seen Henry Brown, and she did not recall whether he said anything
to her. He was talking with Yancy, but Collins had “no idea what was said with him
or her.” Yancy—not Henry—asked her to be a witness to “something” and, “I didn’t
read it. I just signed it. I said okay, fine.” Collins insisted, “I don’t think she—I
signed any—any legal documentation. I didn’t. It was—it was like a memorandum
of her personal whatever. It was not anything legal that I signed.” Finally, Collins
testified that she did not see Henry with a pen in his hand, and she did not know who
either Wanda Walker or Darryl Walker was on the date she signed the attestation
clause. 
          Darryl Walker, the remaining witness to the 1999 Will, was Henry’s nephew
and Wanda’s son. He was not a named legatee in the 1999 Will, but he inherited his
deceased mother’s portion at Henry’s death. Darryl testified that his mother woke
him up to go over to his uncle’s house, saying Henry wanted to talk to him, but she
did not say why. Henry said to him, “‘Hey, there Yogi. Hey, you know, what’s going
on? I just need you to come with mom and sign.’ Didn’t know what it was.” His
mother signed, and then he did. Yancy was there, and Darryl handed her his ID
before he signed her notary log. Darryl did not hear Henry “say anything about who
he left what.” He signed and left. He did not know who Melva Collins was. He saw
only Henry, Traylor, his mother, and maybe James Anderson at the house. Contrary
to Yancy, Darryl testified that he was in Henry’s house only between two and five
minutes. He signed because his mother asked him to, and he then left and went to the
car. Darryl testified, “What should I sit up and talk with them, drink with them, party
with them? It’s grown folks. It’s grown folk’s business. That’s what it was.” 
          On re-cross-examination, after the other witnesses had testified, Yancy agreed
that, of the witnesses who attested to what occurred on March 13, 1999, she was the
only one who saw Henry Brown sign the will and that Darryl and Melva “didn’t see
Henry Brown signing anything.”
THE CHARGE
          In his first issue, appellant argues that the trial court erred in “failing to submit
a proper jury question on the attestation requirement.”
          In pertinent part, the jury charge and verdict read:
QUESTION NO. 3
Do you find from a preponderance of the evidence that the
individual or individuals named below subscribed his or her name in his
or her own handwriting to the purported will dated March 13, 1999
while in the presence of Henry Brown at a time when he or she was
above the age of 14 years?

INSTRUCTION
One requirement of a valid typewritten will is that the witnesses
sign in the actual presence or conscious presence of the testator. 
Conscious presence means that Henry Brown was able to see the
witnesses to the will from his actual position at the time, or at most,
from such position as slightly altered, where he has the power readily
to make the alteration without assistance. There is no requirement that
the witness know that he or she is signing a will.
 
Answer:Yes or No
Melva L. CollinsAnswer: Yes 
Wanda WalkerAnswer: Yes 
Darryl K. WalkerAnswer: Yes 
Pamela A. YancyAnswer: Yes 
(Emphasis added.) 
          The foregoing question and instructions were the only question and instructions
submitted to the jury with respect to whether the 1999 Will was executed with all the
solemnities and formalities and under the circumstances required by law to make it
valid, other than the question whether Henry executed the 1999 Will, which the jury
answered affirmatively.



          Appellant had proposed the following jury question, which the trial court
rejected in writing:
QUESTION 1:
 
Do you find that Henry Brown executed the purported will dated 
March 13, 1999 with all the formalities to make it a lawful and valid
will?
 
You are instructed that all of the formalities required by law to
make a valid will are as follows:
 
1.The will must be in writing;
 
2.The testator must be 18 years or older;
 
3.The testator must personally sign the will;
 
4.The will must be attested by two or more credible and
disinterested witnesses above the age of 14 years who each
subscribe their names to the will in their own handwriting.
 
“Attested” means that the testator acknowledged to the witnesses that
it was his will and the witness [sic] signed it at the request of the
testator, and in the presence of the testator.
 
“Disinterested” means that a person that [sic] does not stand to benefit
from probate of the instrument as a will.
 
Answer “Yes” or “No”
 
Answer: ________________________


(Emphasis added.) 
          Appellant argues that his proffered Jury Question No. 1 and its instructions,
which the trial judge rejected, were legally correct; Jury Question No. 3 and its
instructions, which were submitted to the jury, were legally incorrect; and the trial
court’s rejection of his jury question and instructions caused the rendition of an
improper judgment. I agree.
Standard of Review
          Rule 277 of the Texas Rules of Civil Procedure requires that a trial court
submit to the jury “such instructions and definitions as shall be proper to enable the
jury to render a verdict.” Tex. R. Civ. P. 277; State Farm Lloyds v. Nicolau, 951
S.W.2d 444, 451 (Tex. 1997). An appellate court reviews a trial court’s decision to
submit or refuse an instruction under an abuse of discretion standard. Shupe v.
Lingafelter, 192 S.W.3d 577, 579 (Tex. 2006). When the trial court refuses to submit
a requested instruction on an issue raised by the pleadings and the evidence, the issue
on appeal is whether the request was reasonably necessary to enable the jury to reach
a proper verdict. Id.; Texas Workers’ Comp. Ins. Fund v. Mandlbauer, 34 S.W.3d
909, 912 (Tex. 2000). To be proper, an instruction “must (1) assist the jury; (2)
accurately state the law; and (3) find support in the pleadings and the evidence.” 
Mandlbauer, 34 S.W.3d at 912. The trial court has wide discretion to determine the
sufficiency of definitions and instructions. Plainsman Trading Co. v. Crews, 898
S.W.2d 786, 791 (Tex. 1995); Allen v. Allen, 966 S.W.2d 658, 659 (Tex. App.—San
Antonio 1998, pet. denied). The test of the sufficiency of a definition is its
reasonable clarity in enabling jurors to understand legal words or phrases so that they
may properly answer the questions and render a verdict in the case. Allen, 966
S.W.2d at 660; Harris v. Harris, 765 S.W.2d 798, 801 (Tex. App.—Houston [14th
Dist.] 1989, writ denied). An instruction is improper only if it misstates the law as
applied to the facts. Harris, 765 S.W.2d at 801. 
          If the reviewing court determines that the trial court gave an improper
definition, it must then proceed to inquire whether the error was harmless. Allen, 966
S.W.2d at 660; M.N. Dannenbaum, Inc. v. Brummerhop, 840 S.W.2d 624, 631 (Tex.
App.—Houston [14th Dist.] 1992, writ denied); see also Tex. R. App. P. 44.1(a)(1). 
The omission of an instruction is reversible error only if it probably caused the
rendition of an improper judgment. Shupe, 192 S.W.3d at 579.
Law Governing Proof of Validity of a Will
          To admit a will to probate, the trial court must find that it is valid under the
Probate Code. Guthrie v. Suiter, 934 S.W.2d 820, 829 (Tex. App.—Houston [1st
Dist.] 1996, no writ). “When one meets the legal requirements, properly executes a
will and provides for a disposition of his property not violative of public policy, his
testamentary disposition should be respected.” Estate of Morris, 577 S.W.2d 748,
756 (Tex. Civ. App.—Amarillo 1979, writ ref’d n.r.e.). The paramount issue is
whether the proposed instrument was executed under the solemnities provided by the
Probate Code. See Combs v. Howard, 131 S.W.2d 206, 211 (Tex. Civ. App.—Fort
Worth 1939, no writ). 
          The burden is on the proponent of admitting a will to probate to establish that
the testator executed the will with the formalities and solemnities and under the
circumstances required by law to make it a valid will. Douthit v. McLeroy, 539
S.W.2d 351, 352 (Tex. 1976) (per curiam); In re Estate of Flores, 76 S.W.3d 624, 629
(Tex. App.—Corpus Christi 2002, no pet.); In re Estate of Livingston, 999 S.W.2d
874, 879 (Tex. App.—El Paso 1999, no pet.). The burden never shifts, and the
contestants are not under the burden of proving it invalid. Douthit, 539 S.W.2d at
352; Mahan v. Dovers, 730 S.W.2d 467, 468 (Tex. App.—Fort Worth 1987, no writ);
In re Rosborough’s Estate, 542 S.W.2d 685, 688 (Tex. App.—Texarkana 1976, writ
ref’d n.r.e.).
          The sections of the Texas Probate Code governing validity of a will that are
applicable here include sections 57, 58b, 59, 61, 62, 84, 85, and 88.
          Section 57 of the Probate Code provides that “[e]very person who has attained
the age of eighteen years . . . at the time the will is made, being of sound mind, shall
have the right and power to make a last will and testament, under the rules and
limitations prescribed by law.” Tex. Prob. Code Ann. § 57 (Vernon 2003).
          Section 59(a) of the Code sets out the general requisites of a will. It provides:
(a) Every last will and testament, except where otherwise provided by
law, shall be in writing and signed by the testator in person or by
another person for him by his direction and in his presence, and shall,
if not wholly in the handwriting of the testator, be attested by two or
more credible witnesses above the age of fourteen years who shall
subscribe their names thereto in their own handwriting in the presence
of the testator.

Id. § 59(a) (emphasis added).
          Subsection 59(a) also provides that a will may be self-proving, i.e., established
as valid without the necessity of primary evidence from the witnesses or secondary
evidence, if certain specific statutory criteria are met:
Such a will or testament may, at the time of its execution or at any
subsequent date during the lifetime of the testator and the witnesses, be
made self-proved, and the testimony of the witnesses in the probate
thereof may be made unnecessary, by the affidavits of the testator and
the attesting witnesses, made before an officer authorized to administer
oaths under the laws of this State. Provided that nothing shall require
an affidavit or certificate of any testator or testatrix as a prerequisite to
self-proof of a will or testament other than the certificate set out below. 
The affidavits shall be evidenced by a certificate, with official seal
affixed, of such officer attached or annexed to such will or testament in
form and contents substantially as follows:
 
                    . . . .
 
Before me, the undersigned authority, on this day personally appeared
[names], known to me to be the testator and the witnesses, respectively,
whose names are subscribed to the annexed or foregoing instrument in
their respective capacities, and, all of said persons being by me duly
sworn, the said [name], testator, declared to me and to the said
witnesses in my presence that said instrument is his last will and
testament, and that he had willingly made and executed it as his free act
and deed; and the said witnesses, each on his oath stated to me, in the
presence and hearing of the said testator, that the said testator had
declared to them that said instrument is his last will and testament, and
that he executed same as such and wanted each of them to sign it as a
witness; and upon their oaths each witness stated further that they did
sign the same as witnesses in the presence of the said testator and at his
request; that he was at that time eighteen years of age or over (or being
under such age, was or had been lawfully married, or was then a member
of the armed forces of the United States or of an auxiliary thereof or of
the Maritime Service) and was of sound mind; and that each of said
witnesses was then at least fourteen years of age.

Id. (emphasis added). Subsection 59(c) adds, “A self-proved will may be admitted to
probate without the testimony of any subscribing witness, but otherwise it shall be
treated no differently than a will not self-proved.” Id. § 59(c) (Vernon 2003)
(emphasis added).
          If a written will produced in court is self-proved as provided in section 59 of
the Probate Code, “no further proof of its execution with the formalities and
solemnities and under the circumstances required to make it a valid will shall be
necessary.” Id. § 84(a) (Vernon Supp. 2005). However, if an attested written will
produced in court is contested and is not self-proving, section 84 of the Probate Code
provides in relevant part, that the will “may be proved . . . [b]y the sworn testimony
or affidavit of one or more of the subscribing witnesses thereto, taken in open court.” 
Id. § 84(b)(1) (Vernon Supp. 2005) (emphasis added). 
          To probate a non-self-proving will, the will’s proponent must prove 
 
(1)[T]hat the testator, at the time of executing the will, was at
least eighteen years of age . . . and was of sound mind; and
 
(2)[T]hat the testator executed the will with the formalities and
solemnities and under the circumstances required by law to make it a
valid will; and
 
(3)That such will was not revoked by the testator.

Id. § 88(b) (Vernon 2003). 
          A will copy is proved in the same way as an attested written will, except that,
in addition, section 85 of the Probate Code requires that “the cause of its
non-production . . . be proved, and such cause must be sufficient to satisfy the court
that it cannot by any reasonable diligence be produced, and the contents of such will
must be substantially proved by the testimony of a credible witness who has read it
or heard it read.” Id. § 85 (Vernon 2003) (emphasis added).
          Regarding the competency of witnesses to attest to the validity of a will,
section 61 of the Probate Code provides that a bequest to a subscribing witness is
void if that witness’s testimony is necessary to establish the validity of the will, and
that “such witness shall be . . . compelled to appear and give his testimony.” Id. § 61
(Vernon 2003). However, the witness is still entitled to that share of the estate he
would have been entitled to if the testator had made no will, so long as that share does
not exceed the value of the bequest to him. Id. A bequest to a subscribing witness
who is also a legatee is not void, however, “if his testimony proving the will is
corroborated by one or more disinterested and credible persons who testify that the
testimony of the subscribing witness is true and correct, and such subscribing witness
shall not be regarded as an incompetent or non-credible witness under Section 59 of
this Code.” Id. § 62 (Vernon 2003) (emphasis added). 
          Finally, section 58b of the Probate Code provides that 
 (a) A devise or bequest of property in a will is void if the devise or bequest
is made to:
 
(1) an attorney who prepares or supervises the preparation of the will;
 
(2) a parent, descendant of a parent, or employee of the attorney
described by Subdivision (1) of this subsection. 

Id. § 58b (Vernon 2003).
          “A witness to a will serves to prove the will was executed with the formalities
and solemnities and under the circumstances required to make the will valid.” Estate
of Teal, 135 S.W.3d 87, 90 (Tex. App.—Corpus Christi 2002, no pet.). “The witness
must testify in court, or by affidavit, that the testator declared that the instrument was
his last will and testament, that he had willingly and freely made and executed the
instrument, that he was over eighteen years old, and that he was of sound mind and
body.” Id. (citing Tex. Prob. Code Ann. § 59(a) as “setting out necessary contents
for an affidavit to prove will without testimony of witness in open court”). “The
purpose of a self-proving affidavit is to eliminate the need for the witness to testify
in court.” Id. at 90 n.5. Therefore, “the contents of the affidavit, as prescribed by
section 59, are instructive as to the testimony of a witness necessary to prove a will.” 
Id. 
          The terms “competent witness” and “credible witness” are synonymous. 
Triestman v. Kilgore, 838 S.W.2d 547, 547 (Tex. 1992). A competent witness is one
who receives no pecuniary benefit under the terms of the will. Id. A witness
interested as taking under a will is not competent to testify to establish it. Id.; see
Tex. Prob. Code Ann. § 61. However, a will is not void merely because a witness
is a devisee, provided the will can be proved by other competent witnesses. See Tex.
Prob. Code Ann. § 62; Livingston, 999 S.W.2d at 877; In re Estate of Iversen, 150
S.W.3d 824, 826 (Tex. App.—Fort Worth 2004, no pet.); Scandurro v. Beto, 234
S.W.2d 695, 698 (Tex. App.—Waco 1950, no writ) (when will was signed by
testatrix and attested by two subscribing witnesses, one of whom was devisee under
will, will was not void; but to sustain it and prevent it from failing entirely for lack
of required number of competent attesting witnesses, subscribing devisee had to
become competent witness by receiving no pecuniary benefits under will).
Misstatements of Law in the Instruction to Jury Question No. 3Number and Competency of Attesting Witness
          The instruction to Jury Question No. 3, unlike the instruction to rejected Jury
Question No. 1, failed to inform the jurors that the 1999 Will had to have been proved
by “two or more credible witnesses” in order to satisfy the attestation requirements
of section 59(a) of the Probate Code. See Tex. Prob. Code Ann. § 59(a); Wich v.
Fleming, 652 S.W.2d 353, 355 (Tex. 1983) (holding that two competent witnesses are
required to sustain validity of will); Iversen, 150 S.W.3d at 826 (same); Scandurro,
234 S.W.2d at 698 (same). Nor were the jurors instructed that a “credible” witness
is the same as a competent witness and that a “disinterested” witness is a person who
does not stand to benefit from probate of the instrument as a will. See Triestman, 838
S.W.2d at 547. In particular, they were not informed that “a person interested as
taking under a will is incompetent to testify to establish it.” Id.; see also Scandurro,
234 S.W.2d at 698 (devisee who was subscribing witness was not competent witness
unless she relinquished or court revoked her pecuniary interest under will). Thus, the
jurors were left improperly free to credit the testimony of witnesses who stood to
benefit under the 1999 Will, in addition to being free to accept as sufficient proof the
testimony of one witness, rather than the testimony of two “disinterested and
credible” witnesses. See Tex. Prob. Code Ann. §§ 58b, 59, 61, and 62.
          “Conscious Presence” of the Testator
          The instruction to Jury Question No. 3, also unlike the instruction to rejected
Jury Question No. 1, failed to inform the jurors as to the meaning of “attested.” 
However, it did accurately inform them that “[o]ne requirement of a valid typewritten
will is that the witnesses sign in the actual presence or conscious presence of the
testator.” See id. § 59. It then undermined this correct statement of the law by
defining “conscious presence” as meaning that “Henry Brown was able to see the
witnesses to the will from his actual position at the time, or at most, from such
position as slightly altered, where he has the power readily to make the alteration
without assistance,” thus leaving the jurors with the impression that Henry Brown’s
physical presence in the room when the witnesses signed the attestation clause was
all that was required to satisfy attestation requirements. This definition added nothing
to the jurors’ ordinary understanding of the terms “conscious” and “presence,” and
it was misleading in that it misdirected the jurors to focus on whether Henry was in
the room when the attesting witnesses signed the 1999 Will while failing entirely to
mention the number and competency of witnesses required to establish the validity
of a will.
          Even more importantly, the definition of “conscious presence” given the jurors
contradicted the law that applies when, as here, a will offered for probate was
executed under suspicious circumstances. To establish the validity of a contested will
offered for probate under suspicious circumstances, the person offering the will must
prove by “clear proof” that the testator understood the contents of the proffered
document. This rule was established over a century ago by the Texas Supreme Court
in Kelly v. Settegast, which stated: 
This case comes before us surrounded with facts which call for clear proof that
Kelly knew the contents of the paper offered for probate. The deceased was in
poor health. He was surrounded by those who take benefit under it. It is not
shown that he gave any instructions in regard to a will. It was written by one
who was deeply interested in having such a will made. The making of it was
kept secret from his only living child, though she seems to have been in the
same house. One taking under it, in part, at least, suggested who should be
present at its execution; and it is unnatural, in that it denies to those most
nearly related to the deceased any part of his estate, and was executed by one
not in possession of means within himself to ascertain its contents.
 
. . . . [T]he law does not presume fraud; but when circumstances throw
suspicion on a paper offered for probate it does require clear proof.

2 S.W. 870, 873 (Tex. 1887) (emphasis added); see also Boyd v. Frost Nat’l Bank,
196 S.W.2d 497, 507 (Tex. 1946); Wilson v. Paulus, 30 S.W.2d 573, 577 (Tex. Civ.
App.—Galveston 1930, writ ref’d) (when will written by beneficiary ignores
testator’s relatives and testator could not ascertain contents by inspection, it should
be shown testator understood contents; mere proof of execution does not entitle paper
to probate). 
          The instant case clearly falls under the rule in Kelly, because the circumstances
under which the 1999 Will was purportedly executed are virtually indistinguishable
from that case. Yet the instruction to Jury Question No. 3 misinformed the jurors that
they needed only to determine that Henry was physically in the same room as the
attesting witnesses when they signed his will, not that the persons offering the 1999
Will had to prove that Henry understood the contents of the 1999 Will.
          Attesting Witnesses’ Knowledge
          The instruction to Jury Question No. 3 further stated, in contrast to the
instruction to rejected Jury Question No. 1, “There is no requirement that the witness
know that he or she is signing a will.” This is a critical misstatement of the law.
          First, when, as here, a will copy is offered for probate, the Probate Code
expressly requires that “the contents of such will must be substantially proved by the
testimony of a credible witness who has read it or heard it read,” Tex. Prob. Code
Ann. § 85 (emphasis added); Garton v. Rockett, 190 S.W.3d 139, 145 (Tex.
App.—Houston [1st Dist.] 2005, no pet.) (quoting Tex. Prob. Code Ann. § 85);


 see
also In re Estate of Jones, 197 S.W.3d 894, 898 (Tex. App.—Beaumont 2006, pet.
filed); In re Estate of Capps, 154 S.W.3d 242, 244 (Tex. App.—Texarkana 2005, no
pet.); Coulson v. Sheppard, 700 S.W.2d 336, 337 (Tex. App.—Corpus Christi 1985,
no writ); Howard Hughes Med. Inst. v. Neff, 640 S.W.2d 942, 951–52 (Tex.
App.—Houston [14th Dist.] 1982, writ ref’d n.r.e.). Since an attested will must be
proved by two credible witnesses, if only a copy is offered for probate at least one of
those witnesses not only has to know that he or she signed a last will and testament
but he must have read the will or had it read to him so that he can attest that the copy
is actually a copy of the document he signed. 
          In addition, in order to prove the validity of any will under section 59(a) of the
Probate Code there must be testimony by two credible subscribing witnesses, either
by self-proving affidavit or in open court, that the testator acknowledged to the
witnesses that it was his will and that the witnesses signed it at the request of the
testator and in the presence of the testator. See Tex. Prob. Code Ann. § 59(a)
(setting out requirements for self-proving affidavits); § 59(c) (stating, “A self-proved
will may be admitted to probate without the testimony of any subscribing witness, but
otherwise it shall be treated no differently than a will not self-proved”); Teal, 135
S.W.3d at 90; Rosborough, 542 S.W.2d at 688; see also Wich, 652 S.W.2d at 354
(“Proper attestation by two qualified witnesses validates an otherwise properly
executed will; the only purpose of the self-proving affidavit is to eliminate the
necessity for the testimony of the subscribing witnesses when the will is offered for
probate.”); Boren v. Boren, 402 S.W.2d 728, 729 (Tex. 1966). The Texas Supreme
Court has explained the purpose of the self-proving provision of section 59(a) of the
Probate Code:
The only purpose served by such self-proving provisions is to admit a
will to probate without the testimony of a subscribing witness. The
provision was introduced into the Texas Probate Code in 1955 as an
alternative mode of proving a will. It was not the purpose of the
Legislature to amend or repeal the requirement that the will itself must
meet the requirements of the law. Section 59 expressly states that a self-proved will, except for the manner of proof, shall be treated no
differently than a will which is not self-proved.

Boren, 402 S.W.2d at 729 (citation omitted) (emphasis added). Contradicting the
foregoing express requirements of attestation set out in the Probate Code, the
Instruction to Jury Question No. 3 affirmatively misleads the jury by misinforming
them that “[t]here is no requirement that the witness know he or she is signing a will.”
          The panel, however, confuses Texas’s lack of a requirement that attesting
witnesses must know the contents of the will they signed when the original will (not 
a copy) is offered for probate with a purported tenet of Texas law that no witness who
testifies to establish the validity of a will copy offered for probate need even know
(1) that the piece of paper he signed was attached ever to a will that the testator
acknowledged as such or (2) that the will offered for probate as the testator’s has
anything to do with the will the witness purportedly attested. The panel states, “The
Probate Code does not expressly provide that the testator publish to the subscribing
witnesses that the document that they are witnessing is his will. See Tex. Prob.
Code Ann. §§ 59, 84, 88.” Thus, it simply denies the plain language of the statutes
and the controlling effect of the authorities cited above. In doing so, it effectively
holds that if a will is not self-proving, it need not be proved at all. 
          All that is required to prove the validity of a purported will of which a copy is
offered for probate—according to the probate law established by this Court—is the
testimony of two subscribing witnesses, who need not be legally credible, i.e., who
may be self-interested, that they signed a piece of paper they did not read in the
presence of the testator without knowing what it was they signed, without knowing
whether the testator knew that it was his last will and testament they were signing,
without knowing whether the piece of paper they signed was ever attached to a will,
and without knowing whether the instrument offered for probate as a copy of the will
they purportedly attested actually was a copy of an instrument that they signed or that
even existed when they signed a separate “attestation clause.” Nor, in the panel’s
view, does it matter that the only spokesperson for the validity or contents of the
photocopied mismatched and interlineated pages offered as a true and correct copy
of the will attested by the subscribing witnesses was the subscribing witness who
drafted the purported will and whose mother was a non-relative of the testator but a
substantial legatee under the will. The other subscribing witnesses may—as they
did—affirmatively demonstrate under oath that they did not know what they signed
and that they could not identify that page as part of a will at all. They may even
insist, as Collins did, that they did not sign anything legal. 
          The panel bases its holding on two mistakes. First, it fails to recognize the
distinction between a factually credible witness as determined by a jury and a legally
credible, or legally competent, witness under the Probate Code, whose competency
to testify is a matter of law for the court. Thus, like the jury in this case, which was
not instructed on legal competency, the panel does not evaluate any of the testimony
for legal competency, as the Probate Code requires.
          Second, the panel mistakenly holds that Texas law does not require
“publication,” i.e., “the act of declaring or making known to the witnesses that the
testator understands and intends the instrument subscribed by him to be his last will
and testament.” Davis v. Davis, 45 S.W.2d 240, 241 (Tex. Civ. App.—Beaumont
1931, no writ). In deciding that Texas law does not require publication, the panel
declares that “[o]nly two opinions have addressed whether publication is required,
and only one of them has done so clearly”—namely Davis and Keding v. Kveton, 254
S.W. 612, 614 (Tex. Civ. App.—Galveston 1923, no writ) (op. on reh’g). Both of
these cases are intermediate appellate court pre-Code cases on which no petition for
review was filed, the later of which—the only clear authority relied on by the
panel—is 75 years old; and the language the panel quotes from that case, Davis,
makes it clear that the panel based its opinion on Davis’s statement of pre-Code law,
not on the requirements of the Probate Code. Davis states:
Publication of a will, or the calling the attention of the witnesses to the will, by
the testator, that the instrument which they are requested to attest is his will,
is not a prerequisite to its legality unless required by statute.
 
                    .         .         .         .
 
In this state, the law, [Probate Code section 59’s predecessor], . . . does
not require the publication of a will, nor does it require that the testator inform
the attesting witnesses that the instrument to be attested is his will. . . . Under
our statute, to hold that because the testator did not tell an attesting witness that
the instrument he was signing was the testator’s will rendered the will illegal
would be to read into the statute a prerequisite to the validity of the will that
the Legislature did not include. It would be to superadd a condition or
requirement not expressed in the law. . . . As we have stated above, under the
statute of Texas, publication of the will or knowledge of the attesting witness
that the instrument signed by him was a will are not required.

Davis, 45 S.W.2d at 241 (citations omitted) (emphasis added). 
          The problems with the panel’s reliance on Davis as its admittedly sole clear
authority for its interpretation of the Probate Code’s requirement for attestation of a
will are that (1) section 59(a) of the later-enacted Probate Code does require that the
testator tell the attesting witnesses that the instrument he is signing is his will and that
he ask the witnesses to sign it as attesting witnesses; (2) when, as here, suspicious
circumstances attend the execution of a will offered for probate, Texas law requires
“clear proof” that the testator himself understood the contents of the will; (3) section
59(a) expressly requires that a will be proved by two “credible,” i.e., disinterested,
witnesses; and (4) section 85 of the Probate Code requires that a will copy offered for
probate be proved by the testimony of at least one “credible,” i.e., disinterested,
witness who has read the contents of the will or has had it read to him. See Tex.
Prob. Code Ann. §§ 59, 85. 
          Texas law does not require that attesting witnesses know the contents of a will
when the original, and not a copy, is offered for probate; but the notion that they need
not even know that they are signing an instrument that the testator acknowledges as
his last will and testament is simply false under section 59 of the Probate Code. And
when, as here a will copy is offered for probate, it is equally incorrect to conclude that
the copy’s validity can be established under section 85 of the Code without testimony
as to the contents from at least one legally competent witness who has read the
original or had it read to him. Much more pertinent to appellate review of this case
than the language in Davis upon which the panel relies is Davis’s recognition that “[a]
will must be executed in accordance with the statutory requirements, or otherwise it
is entirely void.” Davis, 45 S.W.2d at 241.
          Conclusion
          Texas Rule of Civil Procedure 277 requires that an instruction assist the jury,
accurately state the law, and find support in the pleadings and the evidence. 
Mandlbauer, 34 S.W.3d at 912. The test of a definition’s sufficiency is its clarity in
helping jurors understand legal words and phrases so they can properly answer the
questions and render a verdict. Allen, 966 S.W.2d at 660; Harris, 765 S.W.2d at 801. 
          Here, the instruction for Jury Question No. 3 failed to instruct the jury on
which evidence to credit, i.e., legally “credible and disinterested” witnesses, or legally
competent witnesses; it failed to instruct the jury on the number of such credible and
disinterested witnesses required to prove up a contested will; it affirmatively
misstated the law by misdefining the “conscious presence” of the testator, rather than
informing the jurors that the person presenting a contested will for probate executed
under suspicious circumstances must clearly prove by competent evidence that the
testator understood the contents of the will; and it affirmatively misstated the law by
instructing the jurors incorrectly that none of the subscribing witnesses needed to
know that they were signing a will, thus, a fortiori, that none of them needed to have
read the will or have had it read to them, even though only a copy of a purported will
was offered for probate.
          By contrast, the instruction to rejected Jury Question No. 1 correctly informed
the jurors that they must find that the 1999 Will was “attested” by “two or more
credible and disinterested witnesses.” It correctly defined “disinterested” as meaning
“a person that does not stand to benefit from probate of the instrument as a will,” and
it correctly defined “attested” as requiring that the testator have “acknowledged to the
witnesses that it was his will” and that the witness have “signed it at the request of the
testator, and in the presence of the testator.” 
          Since Jury Question No. 3 misstated the law and rejected Jury Question No. 1
correctly set out the requirements for attestation of a will, I would hold that the trial
court erred in submitting Jury Question No. 3 and its instruction to the jury instead
of Jury Question No. 1 and its instruction. I would determine, therefore, whether the
error was harmful, i.e., whether it probably caused the rendition of an improper
judgment. See Shupe, 192 S.W.3d at 579.
Harmfulness of the Error
          In reviewing a factual-sufficiency challenge to a jury finding on an issue on
which the appellant did not have the burden of proof, we consider and weigh all of
the evidence and set aside the verdict only if the evidence that supports the jury
finding is so weak as to make the verdict clearly wrong and manifestly unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Bay, Inc. v. Ramos, 139 S.W.3d 322, 329
(Tex. App.—San Antonio 2004, pet. denied). 
          A ‘no evidence,’ or legal insufficiency, point of error is a question of law that
challenges the legal sufficiency of the evidence to support a particular fact finding. 
 County of El Paso v. Dorado, 180 S.W.3d 854, 862 (Tex. App.—El Paso 2005, pet.
denied). Because ‘no evidence’ points are questions of law, they are reviewed de
novo. State Department of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322,
327 (Tex. 2002).
          In conducting a legal-sufficiency review, “we must view the evidence in a light
that tends to support the finding of disputed fact and disregard all evidence and
inferences to the contrary.” Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709
(Tex. 2003). However, “[t]he final test for legal sufficiency must always be whether
the evidence at trial would enable reasonable and fair-minded people to reach the
verdict under review. . . . [L]egal-sufficiency review in the proper light must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not.” City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005). Thus, a no-evidence challenge will be sustained when “‘(a) there is a complete
absence of evidence of a vital fact, (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact, (c) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the
evidence conclusively establishes the opposite of the vital fact.’” King Ranch, Inc.
v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting Merrell Dow Pharms., Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). 
          The evidence upon which the jury relied in determining that the 1999 Will was
validly attested was almost entirely legally incompetent testimony, i.e., it was the
testimony of a single statutorily incompetent witness, Yancy. When this testimony
is disregarded, as it must be, the evidence is factually insufficient to support a finding
that the 1999 Will was properly attested, i.e., such a finding is against the great
weight and preponderance of the competent evidence; hence the evidence is
insufficient to support the trial court’s judgment that the 1999 Will was valid.
          Yancy
          Yancy, the drafter of the 1999 Will and the daughter of Traylor, a non-relative
beneficiary of the 1999 Will, is not a disinterested and credible witness within the
terms of the Probate Code. Section 58b of the Code provides that “[a] devise or
bequest of property in a will is void if the devise or bequest is made to . . . a parent
. . . of the attorney” who prepared or supervised the preparation of the will.” Tex.
Prob. Code Ann. § 58b. A person who stands to benefit under a will is not a
disinterested or credible witness, but a legally incompetent witness. Triestman, 838
S.W.2d at 547. Thus, under section 58b, a person who drafts a will is an interested
person who may not use that position of trust to benefit either himself or a close
relative, and, if he does, he is not competent to testify to the validity of the will.


 
Here, Yancy’s mother, a non-relative of the testator, Henry, was a principal
beneficiary of the 1999 Will Yancy drafted. Therefore, Yancy was incompetent to
testify to establish the validity of the 1999 Will.
          Yancy was also an incompetent witness under sections 61 and 62 of the Probate
Code, which provide that a bequest to a subscribing witness is void if the will cannot
be established other than by the testimony of that witness, unless “his testimony
proving the will is corroborated by one or more disinterested and credible persons
who testify that the testimony of the subscribing witness is true and correct.” Tex.
Prob. Code Ann. §§ 61, 62. Under section 61 and 62 of the Code, a witness who
stands to benefit from a will is incompetent to establish the validity of the will as a
matter of law unless his testimony is corroborated by at least one disinterested and
credible witness. See id.; Triestman, 838 S.W.2d at 547. Not only was Yancy an
interested witness under section 58b of the Code and, therefore, incompetent to
testify to establish the validity of the 1999 Will, her testimony as to the drafting of the
1999 Will, the contents of the 1999 Will, its execution by Henry, and Henry’s
knowledge of its contents was corroborated by any other credible witness, so that
even had she been a legally competent witness, section 61's requirement that her
testimony be corroborated by a credible witness would not have been met. Nor, under
the circumstances of this case, was section 59's requirement that two credible
witnesses must attest a will met.
          Collins
          Collins, who did not take under the 1999 Will, was a disinterested and credible
witness. However, her testimony does not support the conclusion that the 1999 Will
was valid. Rather, it shows that, the 1999 Will was not executed with the solemnities
and formalities and under the circumstances required by law. See Tex. Prob. Code
Ann. §§ 57, 59, 88. Collins did not know, or even speak to, Henry Brown, and,
therefore, she could not testify to whether Henry intended the 1999 Will to be his last
will and testament or whether he knew its contents; she did not know that she herself
had signed a legal document, much less a last will and testament; she did not know
whether or not the piece of paper she signed was attached to the original of the 1999
Will Copy offered for probate, only that she had signed a page presented to her by
Yancy; and she did not see Henry execute anything or even know whether he was
capable of signing anything, or had prepared a will. Therefore, her testimony does
not corroborate the validity of the 1999 Will.
          Darryl Walker
          Darryl Walker, unlike Collins, is arguably an incompetent witness since he
inherited his mother’s legacy under the 1999 Will, which he did not disclaim. 
Nevertheless, assuming that Darryl’s testimony was competent, his testimony, like
Collins’, affirmatively established that the statutory formalities and solemnities
requisite to the validity of an attested will were not followed. 
          Darryl, like Collins, gave no testimony that the piece of paper he signed was
part of the purported 1999 Will of which a copy was offered for probate, that Henry
signed the 1999 Will, or that the testamentary pages of the 1999 Will were even in the
same room or existed when he signed the attestation clause. He did not know the
contents of the 1999 Will, and he did not know that Henry knew the contents. Thus,
like Collins, Darryl was not able to corroborate the validity of the 1999 Will, as
required of an attesting witness. 
          Counting all the foregoing testimony as disinterested and credible—or even
counting the testimony of Yancy alone as disinterested and credible—appellees fell
far short of carrying their burden of clearly proving the validity of the 1999 Will
Copy offered for probate under the plain language of section 59 of the Probate Code. 
Therefore, the trial court’s judgment on the verdict, holding that the 1999 Will was
valid and admitting the 1999 Will Copy to probate, was clearly erroneous.
 
 
 
 
 
 
 
 
 
CONCLUSIONI would sustain appellant’s first issue. I would hold that the trial court erred
in rejecting a proper jury question and instructions regarding the proof required by
law to establish the validity of a will and in submitting a legally incorrect jury
question and instructions, thereby causing the rendition of an improper judgment. 
Accordingly, I would reverse the judgment of the trial court and remand the cause for
further proceedings in accordance with this opinion. 
 


 
Evelyn V. Keyes
                                                                        Justice

Panel consists of Justices Taft, Higley, and Bland.
Appellant moved for rehearing. The panel denied the motion for rehearing.
A majority of the justices of the Court voted to deny appellant’s motion for en banc
reconsideration. See Tex. R. App. P. 41.2(c).
Justice Keyes, dissenting from denial of en banc reconsideration.