**Ann Thompson HARRIS, Appellant,**

v.

**Paul HARRIS, Appellee.**

**No. B14–87–00716–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 20, 1989.

Rehearing Denied March 3, 1989.

Robert J. Piro, Pamela E. George, Houston, for appellant.

Donn C. Fullenweider, Houston, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION ON MOTION FOR REHEARING

DRAUGHN, Justice.

On Motion for Rehearing we withdraw our opinion of October 20, 1988, and substitute the following therefor.

Appellant Ann Harris and Appellee Paul Harris were twice married and twice divorced. Their first marriage was terminated in 1972; their last marriage began in 1979 and ended in a final judgment of divorce on May 28, 1987. Ann Harris now appeals this latter judgment on the ground that the trial judge mischaracterized certain of her husband's assets as his separate property.

Appellant's challenge is directed at the distributions of her husband's partnership interest in his former law firm and his interest in that firm's contingent fee arrangement for its representation of the heirs of the Howard Hughes estate. Based on the jury's answers to special issues, the trial judge ruled these assets were the husband's separate property. Appellant contends that there was insufficient evidence

to support such a finding and that to divide the marital estate based on it was an abuse of discretion. She also asserts that the court erred in defining separate property in its charge to the jury. Further she contends that the court erred in disregarding the jury's answer to one special issue and its refusal to set aside the jury's answers to two others.

Specifically, in her first point of error, appellant contends that the trial court erred in defining separate property in the charge to the jury by including aspects of the definition which were not raised by the evidence and by excluding an instruction regarding the community property character of compensation for services under a separate property contract of employment. Appellant objected to the instruction on these grounds.

The definition of separate property included in the charge by the court was as follows:

Separate property means (1) all property a spouse owned or claimed before marriage and (2) all property the spouse acquired after marriage by gift, devise, or descent.

Property is "claimed before marriage" if the right to the property accrued before marriage even though the legal title or evidence of title might not be obtained until after marriage.

Property is "acquired before marriage" if the inception of the right, rather than the completion or ripening thereof, occurs before marriage.

If a contract to purchase is entered into before marriage, although the legal title is not finally perfected until after marriage, the property becomes the separate property of the purchaser-spouse. It is immaterial that part of the purchase price is thereafter paid from community funds.

Property acquired with separate-property moneys, property, or credit is separate property. The character of separate property will not be altered by the sale, exchange, or substitution of the property. As long as separate property can be definitely traced and identified from

clear and convincing evidence, it remains separate property regardless of the fact that the separate property may undergo any number of mutations and changes in form.

"Community property" consists of the property, other than separate property, acquired by either spouse during marriage. Property possessed by either spouse during or on dissolution of marriage is presumed to be community property, but this presumption may be rebutted by clear and convincing evidence.

It is appellant's position that there was no evidence raising an issue of (1) acquisition of property after marriage by gift, devise or descent, (2) inception of title, (3) a contract to purchase prior to marriage, or (4) acquisition of property with separate monies or credit. Appellant therefore concludes that the inclusion of those parts of the definition referring to such issues was confusing to the jury and resulted in reversible error. We do not agree.

■ The only function of an explanatory instruction or definition in the charge is to aid and assist the jury in answering the issues submitted. *First State Bank and Trust Co. v. George*, 519 S.W.2d 198, 207 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). The trial court has considerably more discretion in submitting instructions and definitions than it has in submitting special issues. *Id.* at 207; *Houston National Bank v. Biber*, 613 S.W.2d 771, 775–776 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Definitions shall be given as necessary to enable jurors to understand legal words or phrases used so that they may properly answer the special issues and render a verdict in the case. *Id.* at 775. The test of the sufficiency of a definition is its reasonable clarity in performing this function. *Id.* at 776; *Gulf Insurance Company v. Vela*, 361 S.W.2d 904, 906 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.). An explanatory instruction is improper only if it is a misstatement of the law as applicable to the facts. *Wakefield v. Bevly*, 704 S.W.2d 339, 350 (Tex.App.—Corpus Christi 1985, no writ).

■ The definition given by the court is the correct legal definition of marital property. TEX. CONST. Art. XVI § 15; TEX.FAM. CODE § 5.01. While appellant complains that the evidence did not raise issues involving the acquisition of property after marriage by gift, devise or descent, special issues number three and four inquire about an alleged oral gift of property from husband to wife. Furthermore, while inclusion of the example regarding a pre-marital contract to purchase was not mandated by the facts, there was testimony about separate real property as well as the pre-marriage acquisition of other property interests arising from contracts. (In this regard, see *Allen v. Allen*, 704 S.W.2d 600, 604 (Tex. App.—Fort Worth 1986, no writ) which applies the inception of title rule to the incorporation of a business.) The example also aids in an understanding of the distinction between property "claimed" or "acquired" before marriage. It is highly possible, therefore, that the jury's understanding of the concept of separate property would be aided by such an example and the neutral example used avoided a comment on the evidence. To show reversible error, appellant must demonstrate harm from the definition complained of. *Wakefield, supra*, 704 S.W.2d at 348. While appellant speculates as to confusion which may have been created by the examples submitted, there was no showing of such confusion as demonstrated by inconsistent or contradictory answers by the jury. *Id.* The court did not commit reversible error in giving the instruction. Appellant's first point of error is overruled.

In points of error two and three, appellant challenges the sufficiency of the evidence to support the jury's characterization of the previously mentioned financial assets as the separate property of appellee. The second point of error challenges the jury's separate property characterization of appellee's interest in the "Reserved Capital Agreement" of Andrews and Kurth, an agreement providing for the distribution of proceeds from the "AK/FRL Contingent Fee Agreement" between Andrews and Kurth and the maternal heirs of Howard

Hughes. Point of error three challenges the characterization of payments to appellee under a buy-out agreement (the A–K Interest Buy-out) entered into among the partners of appellee's former law partnership, Andrews and Kurth. It was alleged at trial that the A–K Interest Buy-out was worth approximately $500,000.00 while the value of appellee's interest in the AK/FRL fee was estimated to be several million dollars.

■ Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. Section 5.02, TEX.FAM.CODE. The party claiming property as separate has the burden to overcome this presumption by clear and convincing evidence. *Id.; Horlock v. Horlock*, 614 S.W.2d 478, 480 (Tex.Civ.App. —Houston [14th Dist.] 1981, writ ref'd n.r. e.). To discharge this burden a spouse must trace and clearly identify the property claimed as separate. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975); *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex.1973). If separate property and community property have been so commingled as to defy resegregation and identification, the statutory presumption prevails. *Tarver v. Tarver*, 394 S.W.2d 780 (Tex.1965). However, when separate property has not been commingled or its identity as such can be traced, the statutory presumption is dispelled. *Peaslee–Gaulbert Corp. v. Hill*, 311 S.W.2d 461, 463 (Tex.Civ.App.—Dallas 1958, no writ). The presumption, which is not evidence, ceases to exist upon introduction of positive evidence to the contrary and is not then to be weighed or treated as evidence. *Empire Gas and Fuel Co. v. Muegge*, 135 Tex. 520, 143 S.W.2d 763, 767 (1940); *Roach v. Roach*, 672 S.W.2d 524, 530 (Tex.App.— Amarillo 1984, no writ); *In re: Estate of Glover*, 744 S.W.2d 197, 200 (Tex.App.— Amarillo 1987, writ denied). Once determined, the character of the property is not altered by the sale, exchange or substitution of the property. *Norris v. Vaughn*, 152 Tex. 491, 260 S.W.2d 676, 679 (1953); *Horlock v. Horlock*, 533 S.W.2d 52, 60 (Tex.Civ.App.— Houston [14th Dist.] 1975, writ dism.). Property established to be separate remains separate property regardless of the fact that it may undergo any number of mutations and changes in form. *Id.* With these rules in mind, we first consider point of error three challenging the characterization of the A–K partnership buy-out payments.

■ Under the entity theory of partnership, adopted by Texas in the Uniform Partnership Act, TEX.REV.CIV.STAT.ANN. art. 6132b (Vernon 1970), partnership property is owned by the partnership entity, not the individual partners. *Marshall v. Marshall*, 735 S.W.2d 587, 593–594 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). A partner's rights in specific partnership property are wholly subordinated to the rights of the partnership entity as owner of the property. He may possess the property only for partnership purposes. See TEX.REV.CIV.STAT.ANN. art. 6132b § 1; Bromberg, *Source and Comments*, (Vernon 1970). Partnership property is therefore neither separate nor community in character. *Marshall* at 594. The only partnership property right the partner has which is subject to a community or separate property characterization is his *interest* in the partnership, that is his right to receive his share of the partnership profits and surplus. *Marshall* at 594; *McKnight v. McKnight*, 543 S.W.2d 863, 867–868 (Tex.1976). Distributions of the partner's share of profits and surplus (income) received during marriage are community property even if the partner's interest in the partnership is separate property. TEX.FAM.CODE, § 5.01(b); *Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799 (1925); *Marshall v. Marshall*, 735 S.W.2d at 594. In the trial court appellant made no claim regarding community property income from the partnership interest but focused instead on the characterization of the partnership interest itself.

■ Appellant correctly asserts that appellee had the burden to show by clear and convincing evidence that his partnership interest in Andrews and Kurth was his separate property. It was undisputed at trial that this clearly identified partnership interest was awarded to him as his separate

property in a previous divorce and belonged to him long before his second marriage to appellant. *See, In re: Marriage of Higley*, 575 S.W.2d 432, 434 (Tex.Civ. App.—Amarillo 1978, no writ). During appellee's tenure as a partner at Andrews and Kurth, there were two partnership agreements executed. The second agreement, which was executed during their marriage, altered and controlled the terms of appellee's withdrawal from the firm. However, appellee's partner status in Andrews and Kurth was established when that association of attorneys, then known as Andrews, Kurth, Campbell and Jones, first executed their partnership agreement in 1972. He remained a partner at all relevant times thereafter. The partnership itself was never dissolved. Appellee's partnership interest upon his withdrawal from the firm was, therefore, the same partnership interest that he possessed in 1972 and which was adjudged his separate property in a prior divorce.

Under established principles requiring tracing and identification of separate property, the presumption of community property was rebutted. Once the presumption ceased to exist, it was incumbent upon appellant to go forward with evidence attacking appellee's successful identification of his partnership interest. There was no evidence presented to show that a "new" or "additional" interest had been acquired during the parties' marriage. Furthermore, while it may be possible in some cases to show that an increase in the value of a separate property asset was based on some community property factor, such was not shown by any evidence in this case. No such reimbursement theory was developed at trial.

Appellant's position instead is that the evidence appellee presented was insufficient to establish that the partnership interest owned by Paul Harris prior to the marriage as his separate property was the same as the interest for which he was receiving monthly payments under the buyout agreement. Apparently, appellant believes that if the system of valuation of appellee's partnership interest changed during the marriage, by virtue of the amendments to the original partnership agreement, any increase in the sum due to him at buy-out would presumptively be community property. We do not agree with this reasoning.

While the value of appellee's separate property interest may have fluctuated from time to time, there was no evidence that any "additional" interest was acquired during the parties' marriage. As in the case of stock splits and increases, analagous to this situation involving "units" of a partnership, mutations and increases in separate property remain separate property. *Horlock v. Horlock*, 533 S.W.2d 52, 60 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ dism.). There was sufficient evidence to support the jury's finding that the monthly payments of $8,833.00 as a buyout of the value of his partnership interest were appellee's separate property. Appellant's third point of error is overruled.

 We now return to appellant's second point of error which attacks the sufficiency of the evidence to support the jury's separate property characterization of Paul Harris' interest in the "Reserved Capital Agreement of Andrews and Kurth."

It was undisputed that the AK/FRL contingent fee contract was entered into October 1, 1977, after the first marriage of appellant and appellee and before their second marriage, between the maternal heirs of Howard Hughes and the law partnership of Andrews and Kurth. It provided for recovery by Andrews and Kurth of thirty percent of all monies awarded to Hughes' maternal heirs as compensation for the firm's representation of the heirs in the complex legal battles which ensued following Howard Hughes' death. Paul Harris is a party to that contract, and a beneficiary of it, only by virtue of his status as a partner in Andrews and Kurth.

Whether the contingent fee contract was the property of a separate partnership among the AK partners alleged to have been created specifically for the management of the Hughes case or not, the parties to the contract were the Hughes heirs and the Andrews and Kurth partnership.

There is no evidence in the record that the fee contract was owned by the several partners individually. Under the entity theory of partnership, the undivided interest owned by individual partners in specific partnership property is not community property. TEX.REV.CIV.STAT.ANN. art. 6132b, § 28–A (Vernon 1970). Only the partner's interest in the partnership may be characterized as community property. *Id.* Therefore, as partnership property, the fee contract is not subject to classification as either community or separate in nature. *Marshall v. Marshall,* 735 S.W.2d at 594. However, that portion of the partnership profits and surplus (income) received by the partner during marriage is community property regardless of whether the interest in the fee contract itself can be characterized as community or separate. TEX.FAM. CODE § 5.01(b); *Marshall* at 594; *Arnold v. Leonard,* supra, at 803. *In re: Marriage of Higley, supra.*

Although the Reserved Capital Agreement was executed during appellant's marriage to appellee, the effect of that agreement was not to create appellee's rights in the Hughes fee but only to clarify and define each partner's proportionate share of the fee and the manner of its distribution. Appellee testified that his rights to share in the fee accrued on October 1, 1977, the date of the execution of the contingent fee contract, by virtue of his separate property partnership interest. As further evidence of the accrual of those rights, a current Andrews and Kurth partner testified that at least two partners who left the firm prior to execution of the Reserved Capital Agreement nevertheless received their proportionate interest in the AK/FRL fee. Therefore, there was sufficient evidence to support the jury's finding that appellee's interest in the AK/FRL fee was his separate property. Appellant's second point of error is overruled.

Our analysis and holding under point of error number two also impacts our consideration of point of error number four in which appellant attacks the trial court's granting of appellee's motion to disregard the jury's answer to special issue five that AK/FRL was not a partnership.

Special issue number 5 inquired as follows:

Do you find from a preponderance of the evidence that the entity referred to as the "AK/FRL Partnership" is a partnership?

Answer: Choose a or b. Check one.

a. It is a partnership. ___

b. It is not a partnership. _X_

Answer: _b_

■ A trial court on its own motion may disregard a jury finding on a special issue which is immaterial. *Arch Construction, Inc. v. Tyburec,* 730 S.W.2d 47, 51 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Clear Lake City Water Authority v. Winograd,* 695 S.W.2d 632, 639 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). An issue is immaterial when such finding is inapplicable to the case. *Ridout v. Mobile Housing, Inc.,* 497 S.W. 2d 66, 67 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.); *Dobbins v. Redden* 759 S.W. 2d 477 (Tex.App.—San Antonio 1988, no writ). In addition, as provided by Rule 301 of the TEXAS RULES OF CIVIL PROCEDURE, the court may, upon proper motion and notice, disregard any jury finding which has no support in the evidence. *Arch Construction,* 730 S.W.2d at 51.

Both parties filed motions to disregard certain of the special issues. Appellee requested the court disregard issue number five on the grounds that, among other things, it was merely evidentiary and did not resolve an ultimate issue in the case. In other words, appellee alleged that the issue was immaterial. The court granted the motion to disregard issue number five and denied the remaining motions without specifying the grounds for its decision.

It was appellee's testimony, corroborated by the document itself and the testimony of a partner at Andrews and Kurth, that the firm of Andrews and Kurth was a partner with the maternal heirs of Hughes in the AK/FRL enterprise. The terms of that partnership allegedly were set out in the Contingent Fee Agreement together with the Reserved Capital Agreement of Andrews and Kurth which was made retroac-

tive to the date of the Contingent Fee Agreement.

Appellant claimed that appellee failed to establish that the entity satisfied several of the tests or overt manifestations of partnership. She correctly asserted that the mere filing of a partnership tax return does not establish the status of a business entity as a partnership. However, while she believes that the jury's finding that AK/FRL was not a partnership, if allowed to stand, would confirm her right to recovery of a portion of appellee's interest in the AK/FRL fee, we do not agree.

■ Since we hold that the AK/FRL contingent fee contract was the property of the law partnership of Andrews and Kurth, regardless of whether it could be classified as a separate partnership in and of itself, we must necessarily hold that any finding in response to special issue five was immaterial to the judgment in the case. The only interest appellee "owned" in AK/FRL arose from his partnership interest in the firm. That interest was established to be his separate property. Therefore, there was no error in the trial court's decision to disregard the jury's answer to the issue. Point of error number four is overruled.

■ On the other hand, even though appellee's interest in AK/FRL was his separate property, any income from the AK/FRL enterprise paid to appellee during marriage would be community property since income from separate property is community property. *Arnold v. Leonard, supra; Marshall v. Marshall,* 735 S.W.2d at 594. While the community could not claim a portion of appellee's separate partnership *interest* in the fee, a claim to community income from that interest would have been viable. However, by failing to present evidence of the community's share of the income from appellee's separate property interest appellant waived recovery under this theory. TEX.R.CIV.P. 278.

■ In keeping with the principles applicable to stock splits, an increase in the value of a separate property interest resulting from fortuitous circumstances and unrelated to an expenditure of community effort will not entitle the community estate to reimbursement. Note, *Community Property Rights and the Business Partnership,* 57 TEX.L.REV. 1018, 1035–1036. However, a significant line of decisions holds that the community is entitled to reimbursement for time, toil and talent spent by one spouse for the benefit and enhancement of his or her separate property interests. *Jensen v. Jensen,* 665 S.W.2d 107, 109 (Tex.1984); *Vallone v. Vallone,* 644 S.W.2d 455 (Tex.1982); *In re: Marriage of York,* 613 S.W.2d 764, 770 (Tex. Civ.App.—Amarillo 1981, no writ). While the law contemplates that a spouse may expend a reasonable amount of talent or labor in the management and preservation of his separate property without impressing a community character upon it, a showing that appellee's energy was spent in such a way that increased his future right to share in the separate fee without adequate compensation to the community, may have entitled the community to reimbursement for that expenditure of community time. *Vallone* at 459. The burden of pleading and proof at trial is on the party asserting a right to reimbursement. *Id.* In the instant case, the only evidence introduced relevant to this reimbursement issue was appellee's testimony that his income from the Hughes fee was unrelated to the amount or extent of his work on the case.

QUESTIONS BY MR. FULLENWEIDER:

Q. Now, Mr. Harris, did you work on this, part of the Hughes matter while you were a partner at Andrews, Kurth?

A. I certainly did.

Q. And did that have anything with reference to, as far as the work you did, did that have anything to do with the amount of income or fee that you would have from that matter?

A. The work itself?

Q. Yes.

A. On that particular matter?

Q. Yes.

A. No. It was an owned asset. It didn't matter how much work or how little work I did.

Q. Is it true ... what about the other partners?

A. The same is true with them.

While several documents relevant to the payment and distribution of the fee suggest to us a correlation between time expended on the case and allocation of profit, no evidence that appellee's interest was tied to his performance on the case was introduced. Therefore, this unchallenged testimony precludes reimbursement to the community estate for the labor expended by appellee, if any, to increase the value of his separate property interest.

Since our holding in regard to points of error one through four is dispositive of the issues on appeal, we do not consider points five and six.

The judgment of the trial court is affirmed.