**AUTOZONE, INC., Appellant,**

**v.**

**Salvador REYES, Appellee.**

**No. 13–03–338–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Dec. 29, 2006.

Rehearing Overruled Aug. 23, 2007.

---

Walter Christy, George Ditta, Tracy K. Hidalgo, James Waldron, Frilot, Partridge, Kohnke & Clements, New Orleans, LA, Roger W. Hughes, Tom Lockhart, Adams & Graham, Harlingen, Miguel Salinas, Brownsville, for appellant.

Miguel Salinas, Rene B. Gonzalez, Brownsville, Ricardo J. Navarro, Denton Navarro Rocha & Bernal, Harlingen, for appellee.

Before Justices HINOJOSA, YAÑEZ, and GARZA.

## MEMORANDUM OPINION

Memorandum Opinion by Justice GARZA.

Appellee, Salvador Reyes, sued his former employer, AutoZone, Inc., for age discrimination after his employment was terminated. TEX. LAB.CODE ANN. § 21.051 (Vernon 2006). According to AutoZone, Reyes was discharged for violating the company's sexual harassment policy. A jury found in favor of Reyes and awarded him $61,440 in back pay, $211,800 in compensatory damages, and $1,500,000 in exemplary damages. The trial court found the award of $1,773,240 in damages awarded by the jury exceeded the statutory limits imposed by law, found that Reyes was not entitled to front pay, and reduced the award to $300,000 in damages, $39,615 in attorney's fees and costs in the amount of $2,966.76. The judgment of the trial court is modified to reduce the award of back pay and to delete the award of punitive damages. Otherwise the judgment is affirmed as modified.

### BACKGROUND

Reyes was employed by AutoZone in January of 1984. Reyes began his employment as a counter person and worked his way up to parts service manager. In March of 2000, AutoZone employee Irma Knowles filed sexual harassment complaints against Reyes and another employee, Jim Alvarado. The investigation of both complaints resulted in the discharge of Reyes and the transfer of Alvarado. Reyes conceded that he would greet Knowles and other male and female co-workers with a "beso y abrazo" (kiss and hug) as is customary in South Texas, but denied sexually harassing her. Reyes was 62 years old at the time of the discharge.

### I. LEGAL SUFFICIENCY

In its first issue, AutoZone argues that the evidence is legally insufficient to support the jury's finding that Reyes' age was a motivating factor in its decision to discharge him. AutoZone maintains that Reyes was discharged because he admitted to violating the company's sexual harassment policy.

### *Standard of Review*

In conducting a legal sufficiency review, we "view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005); *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex.2005); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003). A no-evidence challenge fails if more than a scintilla of evidence supports the challenged finding. *City of Keller*, 168 S.W.3d at 810; *Cancho-*

*la,* 121 S.W.3d at 739. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004) (citing *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)). Evidence that creates a mere surmise or suspicion of the existence of a vital fact is not legally sufficient. *Id.* (citing *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)). A no-evidence point must be sustained only when the record presents one of the following situations: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller,* 168 S.W.3d at 810 (citations omitted).

We emphasize that jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 819. When there is conflicting evidence, it is the province of the jury to resolve such conflicts. *Id.* at 820. If conflicting inferences can be drawn from the evidence, we assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences. *Id.* at 821. But if the evidence allows only one inference, we may not disregard it. *See id.* Thus, so long as the

evidence falls within a zone of reasonable disagreement, we cannot substitute our judgment for that of the trier-of-fact. *Id.* at 822.

### Applicable Law

 Section 21.051 of the Texas Labor Code, a provision of the Texas Commission on Human Rights Act (TCHRA), prohibits an employer from discharging or in any other way discriminating against an employee because of the employee's age. *See* TEX. LAB.CODE ANN. § 21.051.[1] In discrimination cases that have not been fully tried on the merits, Texas courts apply the burden-shifting analysis established by the United States Supreme Court. *See Canchola,* 121 S.W.3d at 739 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *M.D. Anderson Hosp. v. Willrich,* 28 S.W.3d 22, 24 (Tex. 2000)). Under this burden-shifting analysis, the plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *Stanley Stores Inc. v. Chavana,* 909 S.W.2d 554, 559 (Tex.App.-Corpus Christi 1995, writ denied).[2] Discrimination can by proven by direct or circumstantial evi-

---

1. When reviewing an issue under chapter 21, we may look to cases involving the state statute as well as cases interpreting the analogous federal provisions in resolving these claims. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 24 (Tex.2000).

2. To make a prima facie case of age discrimination "a plaintiff must show that '(1) he was

discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" *Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 576 (5th Cir.2003) (quoting *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir. 1993)).

dence. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001); *Garcia v. Allen,* 28 S.W.3d 587, 600 (Tex.App.-Corpus Christi 2000, pet. denied).

■■ However, when, as here, a discrimination case has been fully tried on its merits a reviewing court does not engage in a burden-shifting analysis. *See Wal–Mart Stores, Inc., v. Canchola,* 121 S.W.3d 735, 739 (Tex.2003) (citing *Rubinstein v. Adm'rs of the Tulane Educ. Fund,* 218 F.3d 392, 402 (5th Cir.2000); *City of Austin Police Dep't v. Brown,* 96 S.W.3d 588, 599 n. 4 (Tex.App.-Austin 2002, pet. dism'd); *see also Travis v. Board of Regents of Univ. of Texas,* 122 F.3d 259, 263 (5th Cir.1997).[3] Instead, the evaluation process is streamlined and we proceed directly to whether the plaintiff submitted legally sufficient evidence to support the jury's ultimate finding. *Wal–Mart Stores, Inc.,* 121 S.W.3d at 739 (citing *Rutherford v. Harris County, Texas,* 197 F.3d 173, 180–81 (5th Cir.1999) (stating "We need not parse the evidence into discrete segments corresponding to a prima facie, an articulation of a legitimate, nondiscriminatory reason for the employer's decision, and a showing of pretext.")); *see also City of Austin Police Dep't.,* 96 S.W.3d at 596 (stating "an affirmative finding will be reviewed on appeal on the basis of whether the plaintiff produced sufficient evidence for the jury to find discrimination had occurred."). At trial, it was Reyes' burden to prove that age was a motivating factor in AutoZone's decision to discriminate against or discharge him. *See Canchola,* 121 S.W.3d at 739; *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001) (stating that a motivating factor is the

standard of causation regardless of how many factors influenced the employment decision); *see also Rutherford,* 197 F.3d at 180–81.

Thus, in discussing AutoZone's first issue, we inquire whether the evidence is legally sufficient to support the jury's finding that age was a motivating factor in AutoZone's decision to discriminate against or discharge Reyes. *Wal–Mart Stores, Inc.,* 121 S.W.3d at 739.

### Analysis

■ Reyes gave the following testimony as his reasons for believing that he was discharged because of his age. Co-workers, Alvarado and Guadalupe Garcia made comments such as "you are getting too old" and "you need to be faster." Reyes felt pressured because of his inability to stay up to date with the increasingly difficult computer programs. Alvarado told Reyes that Jesse Villarreal, a manager at AutoZone, stated that Reyes had been discharged due to his age. AutoZone gave preferential treatment to younger employees by not firing them after similar complaints were lodged against them. For instance, Alvarado, who was younger than Reyes, was not discharged as a result of Knowles' sexual harassment complaint, simply because Alvarado denied harassing Knowles. Additionally, three employees, a female in her twenties (Anne Beaty), a male in his twenties (Alex Parga), and a male in his thirties (John Parrack), who were discharged due to violations of AutoZone's sexual harassment policy were made eligible for rehire with "provision" or "with reservation" while Reyes was not.

---

**3.** Once the case has been submitted to the jury, the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* analysis is unimportant. *Travis v. Board of Regents of Univ. of Texas,* 122 F.3d 259, 263 (5th Cir.1997). "The question of whether a

plaintiff made out a *prima facie* case of discrimination has no place in a jury room." *City of Austin Police Dep't v. Brown,* 96 S.W.3d 588, 596–97 (Tex.App.-Austin 2002, pet. dism'd) (citing *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 122 (5th Cir.1992)).

In addition, a forty-year-old San Antonio employee (Elroy Harrison), who was discharged for violating AutoZone's sexual harassment policy, was first given a reprimand for the "same type of behavior," then upon the employee's continued violation, was discharged.

Jim Alvarado, a manager at the store for a period of two to three months, testified that Villarreal told him that Reyes, the oldest employee at the store, had been terminated because of his age. After learning Reyes had been terminated, Alvarado approached Villarreal to turn in his keys and told Villarreal that he preferred quitting to being fired for sexual harassment. Villarreal responded by stating "whoever needs to be punished has been punished. AutoZone is just trying to get rid of the old people." Alvarado explained that Villarreal elaborated that the "old ones" have a certain way of working and that AutoZone was trying to make changes. Alvarado also testified that although Knowles had launched a sexual harassment complaint against him, he was not terminated.

Regarding AutoZone's sexual harassment training, Alvarado testified it was not sexual harassment when a male and a female employee greeted each other with a hug or handshake and that it was not against policy to greet each other with a hug or peck on the cheek unless it was clear that it was unwelcome. He testified that everyone at the store greeted each other in one of these manners, even management, and that Knowles always seemed to welcome the contact with Reyes and would at times initiate contact herself.

On cross-examination, Alvarado testified that he understood Villarreal's comment— "AutoZone is just trying to get rid of the old people"—to mean that AutoZone was getting rid of all the old people that had been with the company for a long time.

Alvarado also informed the jury that according to AutoZone policy, an employee who files a false sexual harassment claim will be disciplined or terminated. Although Knowles falsely accused him of sexual harassment, no action was taken against her. Instead, Knowles' request to transfer to another store was granted, a transfer that had previously been denied.

Jesse Villarreal, who was one of Reyes' managers at AutoZone, testified that when he commented to Alvarado that AutoZone was getting rid of old people, he meant "old management" and that management changes were needed because some managers were "too lax" and "had a tendency to bend the rules." In support of his contention, Villarreal mentioned two AutoZone managers who were terminated for policy violations, both of whom were in their early to mid-30s and had been managers for thirteen or fourteen years.

Guadalupe Garcia, an AutoZone sales person, testified that he was the one who reported Knowles' sexual harassment concerns to assistant manager Edmundo Morales. Garcia testified that on March 10, Knowles told him that she was upset with Alvarado because he did not let her leave work early that day even though her babysitter had quit. Alvarado did not allow Knowles to leave because the store would be understaffed. Garcia then commented to Knowles that he had seen Reyes lean toward her and asked her how she felt about it. Knowles responded that she felt uncomfortable, but that she did not characterize it as sexual harassment. Garcia also testified that he had never seen Reyes hug, kiss, or sexually harass anyone. He acknowledged that although Knowles initially told him that Reyes had kissed her, she testified at trial that Reyes did not kiss her. Garcia further testified that it is not uncommon for him to greet his ex-wife, also an AutoZone employee, with a "peck"

on the cheek when he visits the store where she is employed. He testified that no one ever informed him that greeting each other with a kiss or "peck" constitutes sexual harassment.

Ken Knecht, AutoZone's Regional Loss Prevention Manager, testified that he interviewed and obtained statements from Knowles, Alvarado, Reyes, Garcia, and Julia Araujo. Knecht submitted the statements to Melody Jones Deener, an AutoZone Relations Specialist located at AutoZone's corporate headquarters in Tennessee. Deener and Rene Munoz, an AutoZone Regional Manager, both testified that they recommended Reyes' discharge because Reyes acknowledged that he had engaged in conduct which violated AutoZone's sexual harassment policy. Deener further testified that an employee who is terminated for sexual harassment is not eligible for rehire.

We conclude that Alvarado's testimony, that Villarreal stated that AutoZone terminated Reyes due to his age, is direct evidence that age was a motivating factor in AutoZone's decision to discharge Reyes. See Garcia v. Allen, 28 S.W.3d 587, 600 (Tex.App.-Corpus Christi 2000, pet. denied) (stating that direct evidence may demonstrate that the given reason for the discharge was false). AutoZone argues, as it did at trial, that Villarreal's reference to "old people" refers to the time or experience as a manager and not to age. However, even assuming such reference could have carried that connotation; the statements themselves do not reveal such an alternative meaning, and the jury clearly found otherwise. See City of Austin Police Dep't v. Brown, 96 S.W.3d 588, 596 (Tex. App.-Austin 2002, pet. dism'd) (concluding that the statements "We need to move some of these older officers out and give these younger guys a chance at these jobs," "We want to get you old guys out of

there and get some young guys in," and "We're trying to get rid of you old guys," are direct evidence of age as a motivating factor despite appellant's claim that the comments referred to "time" or "experience" as opposed to age); see also Celanese Ltd. v. Skarbanek, 2005 Tex.App. LEXIS 8875 at *8, 2005 WL 2785217, at *3 (Tex.App.-Corpus Christi 2005, no pet.) (finding legally sufficient evidence of wrongful termination where employee testified that a nurse employed by appellant informed him that part of the reason for his termination was the fact that he filed a workers' compensation claim despite nurse denying making such statement at trial). We remain mindful that it is the province of the jury to resolve conflicts in evidence, to draw whatever inferences it may from conflicting inferences, and to judge the credibility of the witnesses. See City of Keller, 168 S.W.3d at 819–21.

We further conclude that Reyes' evidence that younger employees who also violated the sexual harassment policy either were not fired or were made eligible for rehire with "provision" or "reservations" is some evidence that AutoZone discriminated against Reyes due to his age. See Ysleta Indep. Sch. Dist. v. Monarrez, 177 S.W.3d 915, 917 (Tex.2005) (providing "[t]o prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.' Although 'precise equivalence in culpability between employees is not the ultimate question,' to prove discrimination, the plaintiff must usually show 'that the misconduct for which [he] was discharged was nearly identical to that engaged in by [other] employee[s] whom [AutoZone] [retained or treated differently].' "). Here, the employees that were treated differently all violated AutoZone's sexual harassment policy, however, they were treated more favorably than Reyes. Thus, by not retaining or

making Reyes eligible for rehire, AutoZone discriminated against him in connection with a term, condition, or privilege of employment. *See* TEX. LAB.CODE ANN. § 21.051.

We agree AutoZone presented evidence that it had a legitimate, non-discriminatory motive for terminating Reyes, namely the admitted violation of the sexual harassment policy. However, Reyes testified that he never thought his "friendly" manner of greeting Knowles was a violation of the sexual harassment policy. The jury was the sole evaluator of the witnesses' credibility and entitled to resolve conflicts in the testimony as it saw fit. *Id.* Viewing the evidence presented in the record in the light most favorable to the verdict and disregarding all contrary evidence that a reasonable jury could have disbelieved, we conclude that the evidence was legally sufficient to support the jury's finding that Reyes' age was a motivating factor in AutoZone's decision to terminate him. *See id.; Canchola*, 121 S.W.3d at 739; *Quantum Chem. Corp.*, 47 S.W.3d at 480. AutoZone's first issue is overruled.

## II. JURY QUESTION NUMBER ONE

■ By its second issue, AutoZone contends the court committed harmful error when it allowed the jury to find liability against AutoZone for either discriminating against or discharging Reyes in the same question because the question improperly commingled valid and invalid liability grounds. *Harris County v. Smith*, 96 S.W.3d 230 (Tex.2002); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex.2000).

Question number one of the court's charge asked: "Was age a motivating factor in AutoZone's decision to discriminate against or discharge Plaintiff Reyes?" The jury answered "yes."

AutoZone complains that the pleadings and the evidence at trial do not support the alternative theory of recovery that Reyes was discriminated against as a result of his age. AutoZone maintains that the case was only about whether age was a motivating factor in its decision to discharge Reyes.

In the court's charge conference, AutoZone objected as follows:

> MR. HUGHES: Now, in connection with Question No. 1, of course, we object that there is no evidence of any unlawful discrimination evidence that age was a motivating factor in the decision to terminate.

> Second, we object to the inclusion of the phrase "or discriminate." In Question No. 1 there is no pleading or any—and there is no evidence of any unlawful activity other than terminating Mr. Reyes from his employment. That's the only form of discrimination showed [sic] by the evidence. We ask that it be stricken for that reason.

> Also, that there is no instruction exactly defining it for the, that's it [sic] vague, and allows the jury to wonder about and determine what kind of discrimination he might have suffered other than losing his job. And because there is no pleading in evidence and it shouldn't be in there, we also have the problem that if the jury answers the question yes, we won't know whether they found it because they terminated him or on the basis of some form of discrimination.

AutoZone then tendered its Request No. 4, a proposed instruction. The trial court denied the requested instruction.

As discussed in the legal sufficiency analysis above, Reyes plead and presented evidence that he was also discriminated against and the jury was asked to consider evidence that he was treated differently than younger employees that violated the sexual harassment policy. Accordingly,

the jury could have properly based its decision on the evidence of discharge or discrimination or both. Because both grounds were supported by evidence and were properly submitted there was no improper commingling of valid and invalid liability grounds.

AutoZone also complains that inclusion of the term "discriminate against," without more, allowed the jury to find liability based on a ground that was not properly limited or legally defined. In this regard, AutoZone argues that § 21.051 of the Texas Labor Code permits liability for discrimination "in connection with compensation or the terms, conditions, or privileges of employment." Tex. Labor Code Ann. § 21.051. At trial, AutoZone objected on the grounds that the charge failed to include an "instruction exactly defining it."

AutoZone concedes in its post submission brief that Texas Rule of Civil Procedure 278 sets out error preservation for objecting to a charge. If one complains about a definition or instruction, the complaining party must submit a draft instruction in writing and get a ruling. Appellant's Post Submission Brief p. 8. Here, AutoZone's proposed instruction did not contain a definition for "discriminate against." "Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." Tex.R. Civ. P. 278. To preserve error, the complaining party must tender a written request to the trial court for submission of the instruction, which is in substantially correct wording. *Gerdes v. Kennamer,* 155 S.W.3d 523, 534 (Tex.App.-Corpus Christi 2004, pet. denied). A ruling is also required to preserve error. *Sears, Roebuck & Co. v. Abell,* 157 S.W.3d 886, 892 (Tex.App.-El Paso 2005, pet. denied). Accordingly, AutoZone failed to preserve error. Appellant's second issue is overruled.

### III. Back Pay

By its third issue, AutoZone argues that there is no evidence supporting the jury's award of $61,440 in back pay. AutoZone contends the evidence is insufficient to support the back pay award because the jury failed to offset the back pay by the amount of Reyes' unemployment compensation and interim earnings.

AutoZone provides that Reyes would have earned $53,376 if he had been employed at AutoZone from the time of his discharge (April 2000) until the date of the jury's verdict (December 2002). However, during this period, Reyes earned $32,323 from unemployment and other employment. AutoZone contends the jury failed to offset the finding for back pay with Reyes' interim earnings and unemployment compensation. As such, AutoZone contends Reyes only established a maximum back pay loss in the amount of $21,053.

In awarding back pay, the court must deduct any interim earnings, workers' compensation benefits, and unemployment compensation benefits. Tex. Lab.Code Ann. § 21.258(c) (Vernon 2006); *Stanley Stores, Inc. v. Chavana,* 909 S.W.2d 554, 563 (Tex.App.-Corpus Christi 1995, writ denied). The jury was instructed that "back pay" is that amount of wages and employment benefits that Reyes would have earned if he had not been subjected to his employer's unlawful conduct, less any wages, unemployment compensation benefits, or workers' compensation benefits he received in the interim. Reyes concedes that the evidence showed that his wages from the date of discharge to the date of the jury's verdict would have been "approximately $53,000." However, he

claims the evidence demonstrated he "also had the opportunity to work overtime." Thus, "[o]vertime pay would have substantially increased the amount that Reyes would have received from AutoZone." In addition, Reyes claims he had various fringe benefits such as medical insurance, the option to purchase company stock, and vacation and sick leave that the jury could have considered in reaching an award. He contends, without citing to authority, that although the value of these benefits is not expressly stated in the record "the jury certainly has the discretion to assign a reasonable figure to these common benefits, given [his] salary." Reyes testified that he "sometimes" had the opportunity to work overtime and that he received a raise every year at AutoZone and he explained that the $19,000 per year he was making at the time of his discharge did not include raises. Further, as it relates to employment benefits, AutoZone made health insurance available but Reyes had to pay for it himself. He was entitled to four weeks of paid vacation (at about $365 a week) and received five days of sick leave a year. AutoZone offered stock options which he would buy and sell, making money off them. Although AutoZone offered a 401(k) plan, he was not enrolled in one.

■ Reyes cites to *Mayberry v. Texas Dep't of Agriculture*, 948 S.W.2d 312, 317 (Tex.App.-Austin 1997, writ denied), *City of Houston v. Harris County Outdoor Adv. Ass'n*, 879 S.W.2d 322, 334 (Tex.App.-Houston [14th Dist.] 1994, writ denied), and *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex.App.-Austin 1993, writ denied) for the proposition that a jury has the discretion to award damages within a range of evidence presented at trial, so long as a rational basis exists for the jury's calculation. While these cases stand for this proposition, the cases only lend

credence to awards which are reasonable based on a range of damages presented at trial and supported by the evidence. *See Mayberry*, 948 S.W.2d at 317; *City of Houston*, 879 S.W.2d at 334; *Keilman*, 851 S.W.2d at 930. The evidence in the present case, as the parties concede, supports an award of back pay loss in the amount of $53,376. However, Reyes' testimony that he sometimes worked overtime, received a raise every year, was entitled to four weeks paid vacation, and received five days of sick leave a year, provides a rational basis for the jury to assign a reasonable value to these benefits in reaching its entire award of $61,440. However, it is apparent that the jury failed to offset its award with Reyes' interim earnings and unemployment compensation benefits. Therefore, we conclude the evidence was sufficient to establish that Reyes was entitled to $61,440 in back pay, less $ 32,323 for interim earnings and compensation benefits, or $29,117 in back pay. *See* TEX. LAB.CODE ANN. § 21.258(c). We sustain this issue as it relates to offsetting interim earnings and unemployment benefits, and modify the judgment to reflect a back pay award of $29,117.

## IV. COMPENSATORY DAMAGES

■ In its fourth issue, AutoZone argues that the jury's award of $211,840 in compensatory damages is not supported by the evidence and alternatively argues that the award should be reduced.

Plaintiffs may recover compensatory damages under the Texas Commission on Human Rights Act (TCHRA). TEX. LAB. CODE ANN. § 21.2585(a)(1) (Vernon 2006). Compensatory damages include future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, but may not include back pay, interest on back pay, or other equitable re-

lief authorized under section 21.258(b). *See id.* § 21.2585(c), (d).

Jury question number two asked, "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would reasonably and adequately compensate SALVADOR REYES for damages sustained from such conduct?" The jury was instructed that compensatory damages include future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages. *See id.*

Specifically, AutoZone focuses on the mental anguish component of the award. AutoZone argues that Reyes' evidence fails to rise to the high degree of mental pain and distress required to support an award of mental anguish damages. AutoZone contends that Reyes' evidence merely establishes that Reyes "developed a rash, was upset over losing his job, was embarrassed about this, and that he drank to excess for a period of time." AutoZone asserts that these alleged emotional injuries are insufficient to justify an award for mental anguish and that they are no more than "mere worry, anxiety, vexation, embarrassment, or anger." *See Saenz v. Fidelity Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996); *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex. 1995).

In addressing mental anguish, we are guided by the Texas Supreme Court's decision in *Saenz. See Saenz,* 925 S.W.2d at 614. In *Saenz,* the court reaffirmed *Parkway,* and found that mental anguish damages could not be awarded without either " 'direct evidence of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs' daily routine, or other evidence of a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment,

or anger.' " *Id.* (citing *Parkway,* 901 S.W.2d at 444). Such evidence can take the form of the claimant's own testimony. *Parkway,* 901 S.W.2d at 444. Additionally, there must be some evidence to justify the amount actually awarded. *Saenz,* 925 S.W.2d at 614. While the *Saenz* court acknowledged that juries should be given some measure of discretion in finding damages, it made clear that a jury's discretion was not unlimited. *See id.*

Reyes' testimony fairly conveys the nature of his mental anguish. Reyes had worked at AutoZone for fifteen years. Losing his job made him very "depressed, sad, angry," caused him to become more "reserved with the family," and caused him to begin drinking excessively. He testified "when you lose your job when you are 62 years old, you kind of think, '[w]ell, who is going to hire me again?' I was afraid of not finding a job locally. I was afraid of the future. I thought I had let my family down." At the time of his termination he was the only one working in his household. About two weeks after he was fired, he developed a rash that was "like scabs all over my body." Reyes visited a doctor in Matamoros, Mexico who told him that the rash was actually psoriasis and that "the main cause was stress, very stressed, emotional stress." Reyes stated there is no cure for the psoriasis. At the time of trial, Reyes still had a rash on his ankles and experienced flare-ups from time to time. Reyes also testified that he was having trouble sleeping. Reyes began working at O'Reilly's about a month and a half after he was discharged at AutoZone and testified that finding a job at O'Reilly's helped him with his mental state and he "put [his] life together...." His position at O'Reilly's was as a salesperson or counterman, which is the lowest rank, unlike his prior position at AutoZone which was managerial. He explained that in applying at

O'Reilly's he had to inform the supervisor that he was terminated from AutoZone because he was falsely accused of sexual harassment. When asked if he was embarrassed to tell the supervisor about the sexual harassment allegation, Reyes responded, "I had to be honest with him."

Reyes' wife, Victoria, testified that after Reyes was terminated "he was taking [sic] from the family." He started having trouble sleeping, he also started drinking and getting sick. She would tell Reyes that he was drinking too much and he would explain that he would drink so that he could sleep. Reyes visited a doctor in Matamoros after he developed a rash on his body and the doctor asked if there had been a death in the family or depression. Her relationship with Reyes suffered after he was discharged because he was very upset and started drinking. Their youngest daughter lived with them at the time of Reyes' discharge. Although Reyes was able to get a job pretty quickly, things did not get back to normal because Reyes had to start all over at the age of 62.

We conclude the foregoing evidence is legally sufficient to find that Reyes suffered mental anguish, and the jury's award is not unsupported by the evidence or against the great weight and preponderance of the evidence. Moreover, we note that the jury may or may not have awarded the full $211,840 for mental anguish, or may have awarded some amount for the other types of compensatory damages included in the definition given to the jury. It would be improper for us to speculate on how the jury divided its award among the various types of compensatory damages. *See Hernandez v. American Appliance Mfg. Corp.*, 827 S.W.2d 383, 389 (Tex. App.-Corpus Christi 1992, writ denied).

■ To successfully challenge a multi-element damage award on appeal, the appellant must address all of the elements and illustrate why the evidence is insufficient to support the entire award. *Golden Eagle Archery Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex.2003); *Norfolk Southern Rwy. Co. v. Bailey*, 92 S.W.3d 577, 583–84 (Tex.App.-Austin 2002, no pet.); *Brookshire Bros., Inc. v. Lewis*, 997 S.W.2d 908, 921–22 (Tex.App.-Beaumont 1999, pet. denied); *Price v. Short*, 931 S.W.2d 677, 688 (Tex.App.-Dallas 1996, no writ).

While AutoZone argues that there was no evidence of mental anguish, AutoZone failed to address the evidence pertaining to the other types of compensatory damages. We therefore cannot further analyze AutoZone's challenge regarding compensatory damages because this would entail speculation about how the jury divided its award among the various types of compensatory damages. *See Thomas v. Oldham*, 895 S.W.2d 352, 359–60 (Tex.1995).

### V. JURY QUESTION NUMBER TWO

■ By its fifth issue, AutoZone contends the trial court improperly submitted jury question number two to the jury. Jury question number two reads:

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would reasonably and adequately compensate SALVADOR REYES for damages sustained from such conduct?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you may find.

Do not include in your answer any amount that you find SALVADOR REYES could have earned by exercising reasonable diligence in seeking other employment.

Answer separately, in dollars and cents for damages, if any.

a. Back pay.

"Back pay" is that amount of wages and employment benefits that Salvador Reyes would have earned if he had not been subjected to his employer's unlawful conduct less any wages, unemployment compensation benefits or workers' compensation benefits he received in the interim.

"Employment benefits" include sick-leave pay, vacation pay, profit-sharing benefits, stock options, pension fund benefits, monetary losses incurred as a result of the loss of health, life, dental or similar insurance coverage.

Answer:_____

b. Compensatory damages.

"Compensatory damages" include future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages. Do not include back pay or interest in calculating damages, if any.

Answer:_____ [4]

As a sub-point in its fifth issue, AutoZone contends the trial court erred in submitting the question of back pay to the jury because "only the judge, not the jury, may award equitable relief such as back pay." In support of this argument, AutoZone cites to Texas Labor Code section 21.258 and *Caballero v. Central Power &*

*Light Co.*, 858 S.W.2d 359, 361 (Tex.1993). *See* TEX. LAB.CODE ANN. § 21.258. Auto-Zone contends that, pursuant to section 21.258, "the court may, among other things, order such additional equitable relief, *including back pay,* as may be appropriate." [5] The relevant language in section 21.258 provides that the trial court may order additional equitable relief as may be appropriate, and specifies that additional equitable relief may include "hiring or reinstating with or without back pay." *Id.* § 21.258(a)(2), (b)(1). While section 21.258 makes the award of additional equitable relief in the form of "hiring or reinstating with or without back pay" a matter left up to the trial court's discretion, it neither expressly or implicitly provides that back pay can only be awarded by the trial court.[6] In an attempt to construe section 21.258 as providing that back pay can only be awarded by the trial court, AutoZone cites to the supreme court's decision in *Caballero. See Caballero,* 858 S.W.2d at 360–61. However, AutoZone's reliance is misplaced. While *Caballero* does provide that equitable relief under the TCHRA is to be determined by the trial court, it does not provide that back pay can only be awarded by the trial court. *See id.* (holding that "when properly requested, jury trials are appropriate for finding the ultimate issues of fact under the TCHRA, but not for fashioning appropriate equitable relief."). Further, the corresponding jury

---

4. Jury question two tracks the language found in the corresponding Texas Pattern Jury Charge. *See* COMM. ON PATTERN JURY CHARGES, 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES-BUSINESS, CONSUMER, EMPLOYMENT PJC 110.30 (2002).

5. We note that AutoZone's brief cites to section 21.2585 of the labor code which relates to compensatory damages, instead of section 21.258 which is the section relating to equitable relief.

6. We also note that in allowing the trial court to award equitable relief in the form of "hiring or reinstating with or without back pay" the statute did not necessarily intend that the back pay itself be considered a form of equitable relief. *See* TEX. LAB.CODE ANN. § 21.258 (Vernon 2006). Moreover, equitable relief consists of nonmonetary relief, such as an injunction or specific performance. See BLACK'S LAW DICTIONARY 1038 (7th ed.2000). Back pay is not equitable relief.

charge, Texas Pattern Jury Charge 110.30, clearly contemplates that the issue of back pay be submitted to the jury. *See* COMM. ON PATTERN JURY CHARGES, 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES-BUSINESS, CONSUMER, EMPLOYMENT PJC 110.30 (2002) (providing charge for question on back pay). In addition, we note that the issue of back pay has consistently been submitted to juries. *See Hoffmann–La Roche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 442 (Tex.2004); *United Serv. Auto. Ass'n v. Brite,* 161 S.W.3d 566, 575 (Tex.App.-San Antonio 2005, pet. filed); *Ancira Enters. v. Fischer,* 178 S.W.3d 82, 92 n. 13 (Tex.App.-Austin 2005, no pet.); *see also Claymex Brick & Tile, Inc. v. Garza,* 216 S.W.3d 33 (Tex.App.-San Antonio 2006, no pet.); *W. Telemarketing Corp. Outbound v. McClure,* 225 S.W.3d 658 (Tex. App.-El Paso 2006, no pet.). Accordingly, we find AutoZone's contention without merit and conclude that a jury may award back pay. We overrule AutoZone's fifth issue as it relates to whether the jury could award back pay.

▄▄▄ As a second sub-point in its fifth issue, AutoZone claims a new trial is required because valid and invalid damage elements were commingled in broad-form submission in question 2a. *See Harris County v. Smith,* 96 S.W.3d 230, 234 (Tex. 2003); TEX.R. CIV. P. 277.[7]

Specifically, AutoZone contends the trial court erred in submitting jury question 2a in broad-form because Reyes only proved losses as a result of his vacation pay and sick leave pay but did not prove loss as a result of profit-sharing benefits, stock op-

tions, pension fund benefits, or monetary losses incurred as a result of the loss of health, life, dental or similar insurance coverage. Thus, AutoZone argues, these elements were improperly submitted to the jury without any evidentiary support.

▄▄▄ AutoZone lodged the following objection to question 2a:

> We further would object to the question in that it asks about any submission on employment benefits. That there is no evidence of employment benefits that he lost such as vacation pay, profit sharing, stock options, pension, insurance benefits, et cetera. There is no evidence of that or that would help the jury calculate an amount, even if there was some evidence that he lost it. There is no evidence to help them determine any amount whatsoever. And because it's all submitted together, we won't know how much the jury has awarded for each and, therefore, it prevents me from being able to show reversible error on that point.

The trial court has a duty to submit only those questions, instructions, and definitions raised by the pleadings and the evidence. *See Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992); *see also* TEX.R. CIV. P. 278. However, broad-form submission cannot be used to put before the jury issues that have no basis in the law or the evidence. *Harris County v. Smith,* 96 S.W.3d 230, 236 (Tex.2002); *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 388–89 (Tex.2000).[8]

▄▄▄ Although AutoZone couches its objection and complaint on appeal as one

---

7. When a damages question mixes valid and invalid elements of damages in a single, broad-form submission and the defendant adequately and correctly objected, harmful error occurs because the appellate court cannot determine whether the jury based its verdict on an invalid or improperly submitted damage element. *See Harris County v. Smith,* 96

S.W.3d 230, 234 (Tex.2003); TEX.R.APP. P. 61.1(b); *see also Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 388 (Tex.2000) (finding harmful error where single liability question mixed valid and invalid theories of recovery and defendant properly objected).

8. AutoZone does not contend there was insufficient evidence to support the submission of

challenging the sufficiency of the evidence of different elements of back pay and asks this Court to conduct an analysis in light of *Harris County*, AutoZone is in reality taking issue with the definition of the types of back pay, specifically "employment benefits." AutoZone contends the definition of "employment benefits" should have been modified to only include those types of employments benefits which were supported by the evidence.

■ The trial court has considerable discretion in framing a jury charge and is given wide latitude to determine the propriety of explanatory instructions and definitions. *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 23 (Tex.1998); *Redwine v. AAA Life Ins. Co.*, 852 S.W.2d 10, 14 (Tex.App.-Dallas 1993, no writ). In submitting definitions to assist the jury, the trial court has even more discretion as long as the definition is itself reasonably clear in performing its function. *Harris v. Harris*, 765 S.W.2d 798, 801 (Tex.App.-Houston [14th Dist.] 1989, writ denied); *see Columbia Rio Grande Reg'l Healthcare, L.P. v. Hawley*, 188 S.W.3d 838, 863 (Tex.App.-Corpus Christi 2006, pet. filed); *Grenier v. Joe Camp, Inc.*, 900 S.W.2d 848, 850 (Tex.App.-Corpus Christi 1995, no writ). Accordingly, we review the court's rulings under an abuse of discretion standard. *Hiroms v. Scheffey*, 76 S.W.3d 486, 487 (Tex.App.-Houston [14th Dist.] 2002, no pet.). A trial court abuses its discretion if it acts without regard to any guiding rules or principles. *Id.; Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990).

■ The only function of an explanatory instruction or definition in the charge is to aid and assist the jury in answering the issues submitted. *Harris*, 765 S.W.2d at 801. The definition given by the trial court tracks the language of the recommended definition provided by section 110.30 of the Texas Pattern Jury Charges. Definitions shall be given as necessary to enable jurors to understand legal words or phrases used so that they may properly answer the special issues and render a verdict in the case. *Id.* (citations omitted). The test of the sufficiency of a definition is its reasonable clarity in performing this function. *Id.* (citations omitted).

■ To show reversible error, appellant must demonstrate harm from the definition complained of. *Id.* While AutoZone speculates confusion as to whether the jury based its verdict on a type of employment benefit allegedly not supported by evidence, there was no showing of such confusion as demonstrated by the jury's answers. *Id.* Thus, the court did not commit reversible error in submitting the definition as it did. We overrule AutoZone's second sub-issue.

■ In a third sub-issue, AutoZone challenges jury question 2b's definition of "compensatory damages" which lists "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages" as types of compensatory relief available. Again, AutoZone claims Reyes' evidence failed to support submission of "future pecuniary losses, inconvenience, nonpecuniary damages, or loss of enjoyment of life" as types of compensatory damages. The definition of compensatory damages submitted in question 2b

the issue of back pay to the jury, as a matter of fact, it concedes that Reyes proved loss of wages, vacation pay, and sick leave pay. As it relates to compensatory damages, AutoZone also does not challenge the submission of the

question on compensatory damages to the jury. In fact, AutoZone concedes Reyes presented some evidence of pain and suffering. Thus, whether the trial court properly submitted the questions themselves is not before us.

also tracks the language of pattern jury charge 110.30. As we stated above, in submitting a definition, a trial court has "even more discretion as long as the definition is itself reasonably clear in performing its function." *See Harris,* 765 S.W.2d at 801; *see also Hawley,* 188 S.W.3d at 863; *Grenier,* 900 S.W.2d at 850. AutoZone again speculates confusion as to whether the jury based its verdict on a type of compensatory damage allegedly not supported by evidence. However, there was no showing of such confusion as demonstrated by the jury's answers. *Id.* Thus, the court did not commit reversible error in submitting the definition as it did. We overrule AutoZone's third sub-issue. AutoZone's fifth issue is thus overruled in its entirety.

## VI. PUNITIVE DAMAGES

 In its sixth issue, AutoZone contends the evidence is insufficient to support the jury's award of punitive damages. Punitive damages may be awarded if the employer acted with malice or reckless indifference to the state-protected rights of the employee. TEX. LAB.CODE ANN. § 21.2585. The standard for recovery of exemplary damages is by clear and convincing evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 (Vernon Supp.2006).

 As evidence in support of the punitive damages award, Reyes argues that "AutoZone upper management was well aware of the fact that federal law requires them not to discriminate on the basis of age.... Yet, despite their acknowledgment of the applicability of the state and federal age discrimination laws, AutoZone set about on a course of action which constituted a pattern and practice of discriminating against older employees, by treating them more harshly than younger employees." At most, Reyes' conten-

tion only demonstrates that AutoZone discriminated against him. However, more than mere discrimination is required to authorize punitive damages. *Kolstad v. Am. Dental Assoc.,* 527 U.S. 526, 534, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). After reviewing the record, we conclude there is no evidence of malice or reckless indifference to justify the imposition of punitive damages. Accordingly, we sustain AutoZone's sixth issue.[9]

The judgment of the trial court is MODIFIED to reduce the award of back pay and to delete the award of punitive damages. Otherwise the judgment is AFFIRMED AS MODIFIED.

Justice FEDERICO HINOJOSA not participating.

---

9. Given our disposition of this issue, we need not address AutoZone's two remaining issues which relate to punitive damages. TEX.R.APP. P. 47.1.